THE HONORABLE LAUREN KING

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRAD NORMAN,

                                    Plaintiff,

v.

TRAVELERS INDEMNITY
COMPANY, a foreign insurer doing
business as
"TRAVELERS" in the State of
Washington,

                                    Defendant.

No.: 2:20-cv-1250

PLAINTIFF'S MOTION IN
LIMINE TO EXCLUDE
DEFENSE WITNESS BRADLEY
PROBST

NOTED FOR CONSIDERATION:
OCTOBER 21, 2022

## I. RELIEF REQUESTED

COMES NOW, Plaintiff Brad Norman and moves this court for an Order

EXCLUDING Defense Expert, bio-mechanic, Bradley Probst from testifying "about his

findings and opinions regarding Plaintiff's claimed injuries."[1]  The opinion proffered by Mr.

Probst is (1) irrelevant, (2) beyond the scope of Mr. Probst's expertise, and (3) would not be

helpful to the trier of fact.

---

[1]  Declaration of David LaCross at Ex. 1, Defendant's Expert Disclosure.

*PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE MR. PROBST*
Page 1 of 13

LaCross and Murphy
559 Bay Street
Port Orchard, WA

Warrior Woman Law, PLLC
569 Division Street, Suite D
Port Orchard, WA

## II. BRIEF INTRODUCTION

Mr. Norman suffered injuries in a February 13, 2017 motor vehicle collision including a mild-traumatic brain injury. Both parties agree that the collision resulted in Mr. Norman sustaining a concussion: "[t]he circumstances of his motor vehicle crash in 2017 and the symptoms he reported experiencing immediately following that incident are consistent with concussion or mild traumatic brain injury."[2]

## III. FACTS

On February 2, 2017, at approximately 4:52 pm, Brad Norman was traveling eastbound in his 1989 Chevy ¾ ton pickup truck on highway 101 between Forks and Port Angeles. Linda Huard Hoffman was traveling west bound on the same highway and attempted to pass another vehicle, crashing head on into Mr. Norman.[3] Mr. Norman's vehicle was a total loss.[4] In addition to the significant damage to the front of Brad's vehicle, the window directly behind Brad's head was shattered.[5]

Brad went to the walk-in clinic on February 14, 2017, where he was complaining of headaches and memory loss since the crash of February 3rd. The record reflects that "[m]ore

---

[2] Declaration of David LaCross, Ex. 2, September 9, 2022, report of Defense expert Dr. Howard Lloyd, Psy. D., pg. 10. Although, Dr. Lloyd continues to opine that Mr. Norman's "persisting cognitive difficulties" are, on a more probable than not basis, judged to be secondary to persisting psychological adjustment issues as opposed to any lingering effects from a traumatic brain injury" his opinion remains that the collision resulted, at least initially, in a mild traumatic brain injury.

[3] Declaration of David LaCross, Ex. 3, Traffic Collision Report.

[4] Declaration of David LaCross, Ex. 4, Property Damage Report of Total Loss.

[5] Declaration of David LaCross, Ex. 5, Plaintiff Truck Photo.

LaCross and Murphy
559 Bay Street
Port Orchard, WA

Warrior Woman Law, PLLC
569 Division Street, Suite D
Port Orchard, WA

concerning to the patient is that he feels like he is having problems with memory."[6]  Because Mr. Norman was experiencing neurological problems, he was referred for further work up and was diagnosed by Dr. Lusana Shutz's with "post-concussion syndrome."[7]  Mr. Norman also sought chiropractic care after the collision and was similarly diagnosed by "Concussion without loss of consciousness" by Dr. George Lawrance[8]  After a few months of treatment and with little improvement in cognitive function, Dr. Lawrence referred Mr. Norman to a neurologist.

On August 7, 2017, Mr. Norman was evaluated by Dr. Rubenstein.  At that time. Mr. Norman was still struggling with short term memory concerns like forgetting to let his dog in, misplacing items, or forgetting what he went to the store to purchase.  Neurologist, Dr. Rubenstein's assessment was "Postconcussion syndrome. He has persistent problems with short-term memory and short temperdness/irritability following a 2/3/2017 MVA.  We discussed how his symptoms are common following this sort of event."[9]

Unrelated to the damages in this case, but relevant for timing and analysis, Brad was also seen at the walk-in clinic on August 28, 2017, for an incident at work where he was hit in the head with a post hole digger.[10]

---

[6]  Declaration of David LaCross, Ex. 6, OMC ER Record.
[7]  *Id.*
[8]  Declaration of David LaCross, Ex. 7, Proactive Chiropractic Record.
[9]  Declaration of David LaCross, Ex. 8, The Doctor's Clinic Record.
[10] The post hole digger incident is only relevant to this motion to demonstrate the timeline that months before the post-hole digger incident, Mr. Norman had been diagnosed with a concussion/post-concussion syndrome and had been experiencing ongoing cognitive difficulty since the February 3, 2017 motor vehicle crash.

Through the course of litigation, Mr. Norman was referred to Dr. Martha Glisky for a complete neuropsychological evaluation which took place on September 10, 2018. Based on a review of the medical records, thorough neuropsychological testing, and evaluation of Mr. Norman and Dr. Glisky's education, training, and experience, Dr. Glisky concluded that, on a more probable than not basis, Mr. Norman sustained a concussion/mild traumatic brain injury with ongoing cognitive disorder as a direct and proximate cause of the February 3, 2017 collision.[11] On January 10, 2018, Dr. Glisky performed a follow up neuropsychological evaluation and again opined on a more probable that not basis that Mr. Norman's continued cognitive symptoms and adjustment disorder were directly caused by the February 3, 2017 motor vehicle collision.[12]

On August 13, 2022, Mr. Norman submitted to a Defense Medical (FRCP 35) Exam by defense retained neuropsychologist Dr. Howard Lloyd. Dr. Lloyd also concluded, on a more probably than not basis, that the circumstances of Brad's motor vehicle crash and the symptoms he reported experiencing were consistent with mild traumatic brain injury.[13]

Contrary to all medical evidence, on May 9, 2022, defense retained expert Mr. Probst issue a report in which he opined that the motor vehicle crash of February 3, 2017, did not have a "biomechanical failure mechanism" present to account for the post-concussion syndrome that

---

[11] Declaration of David LaCross, Ex. 8, Dr. Glisky 2018 Report.
[12] Declaration of David LaCross, Ex. 9, Dr. Glisky 2020 Report.
[13] Declaration of David LaCross, Ex. 10, Dr. Lloyd Report.

*PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE MR. PROBST*

| LaCross and Murphy | Warrior Woman Law,PLLC |
| 559 Bay Street | 569 Division Street, Suite D |
| Port Orchard, WA | Port Orchard, WA |

the treating doctors, Dr. Glisky, and defense expert Dr. Lloyd all concluded were caused by the crash.

## IV. AUTHORITY

Under the Federal Rules of Evidence, the district court has broad discretion to assess relevance and reliability of expert testimony. *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579 (1993); *General Elec. Co. v. Joiner*, 522 U.S. 136 (1997); *Kumho Tire Co. Ltd. V. Carmichael*, 526 U.S. 137 (1999). The trial court acts as gatekeeper to ensure that proffered expert testimony is both relevant and reliable. *Kumho Tire Co.*, 526 U.S. at 147. Broad discretion is given to trial courts to admit or exclude expert testimony and expert evidence is properly excluded where foundational facts demonstrating relevancy are not sufficiently established. *Trevino v. Gates*, 99 F.3d 911, 922 (9th Cir. 1996).

The district court analyzes the evidence intended to be offered by each expert under FREV 104(a)[14] to determine whether the expert evidence will assist the trier of fact to understand or determine a fact that is in issue for the specific claim or defense. *Daubert v. Merrell Dow Pharm., Inc.* at 592-93. The inquiry must be connected to the specific facts presented in the case. *Kumho Tire Co. Ltd.*, 526 U.S. at 150. Under FREV 702, an expert witness who is qualified by knowledge, skill, experience, training, or education is allowed to

---

[14] FREV 104(a) provides that: The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege.

| | LaCross and Murphy | Warrior Woman Law,PLLC |
|---|---|---|
| | 559 Bay Street | 569 Division Street, Suite D |
| | Port Orchard, WA | Port Orchard, WA |

testify when,

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

In concurring with the exclusion of similar biomechanical testimony, Justice Yu summed it up best, "This testimony would not have been helpful to the jury in determining the actual level of injury sustained by this particular plaintiff in this particular accident…there is no once size fits all approach to collision or injury threshold levels." *Gilmore v. Jefferson Cnty. Pub. Transp. Benefit Area*, 190 Wash. 2d 483, 506 (2018).

## V.  ARGUMENT

### *1.   Mr. Probst Should be Excluded Because the Fact of Injury from the Subject Collision is Not at Issue (Irrelevant)*

While this is a breach of contract matter, the subject is a personal injury insurance contract and as such the nature of the damages is rooted in negligence.  Mr. Norman must show that the at-fault driver had a duty, that the duty was breached, that because of that breach Mr. Norman was injured, and that the injury resulted in damages.  There is no dispute that the at-fault driver, as all drivers due, had a duty to Mr. Norman and that the duty was breached by the at-fault driver's driving that resulted in a motor vehicle collision.  Therefore, the areas left for inquiry and development at trial are causation and damages.  What injuries were caused by the

*PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE MR. PROBST*

LaCross and Murphy
559 Bay Street
Port Orchard, WA

Warrior Woman Law,PLLC
569 Division Street, Suite D
Port Orchard, WA

crash and what damages resulted.

Even before the court begins its analysis of Mr. Probst's opinions for sufficiency, scientific acceptance, or reliability, the court must determine if the subject matter opinion of the evidence sought to be admitted is relevant. Here, it is not. Mr. Probst was designated to provide an opinion as to "his findings and opinions regarding Plaintiff's claimed injuries" and he concludes that "the subject incident lacked the energy necessary to create a mechanism for a causal relationship for Mr. Norman's post-concussion syndrome."[15][16] Therefore, to be relevant, the fact of whether Mr. Norman sustained a head injury[17] at all in the subject motor

---

[15] *See* Defendant's Expert Disclosure and Report of Mr. Probst.

[16] Mr. Probst was excluded from testifying about "injuries" several times due to his lack of any medical training, prior to such exclusions Mr. Probst routinely attempted to discuss the forces in terms of potential resultant "injury." However, after he was excluded from testifying for attempting to provide opinions as to injury beyond his expertise, Mr. Probst has coined the term "biomechanical failure." When asked to define "biomechanical failure" Mr. Probst defines it as: "Simply that it's a mechanical failure of biologic tissue." Declaration of David LaCross, Ex. 12, Excerpt Deposition transcript, October 5, 2021 deposition transcript Bradley Probst in *Rodriguez v. Hernandez*. After multiple attempts to have Mr. Probst further define and differentiate what he means by "biomechanical failure" and how his attempt to testify to a "biomechanical failure" are different than his previously excluded attempts to testify that a collision did not cause injury, the best Mr. Probst could come up with is as follows:

> Q: So you just do not use the term "injury" at all in your vocabulary?
> A: Not in the context of a biomechanical analysis, no.
> Q: Would that be improper?
> A: Oh, I've used it before. Because, again, just like you said, you have no knowledge of that term, and to try to be kind to some people, like well, let's use some colloquialisms. But then it opens a whole different can of worms, because people misinterpret a variety of things like that. So now I simply choose to use biomechanical failure because it is precision of language. It's trying to be very precise in what is being analyzed, what is being stated.

*Id.* at pg. 15, lines 8-21. It is clear that Mr. Probst simply switched out the word "injury", which he was excluded from testifying about, with biomechanical failure, while his meaning remained exactly the same.

[17] Mr. Probst classifies the traumatic brain injury as a "claimed head biomechanical failure" and concludes that "there is no biomechanical failure mechanism present in the subject incident to account for Mr. Norman's claimed head biomechanical failures. As such, a causal relationship between the subject incident and the head biomechanical failures cannot be made." Mr. Probst report at pg. 13, Conclusion 4. However, Mr. Probst's true

*PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE MR. PROBST*

LaCross and Murphy
559 Bay Street
Port Orchard, WA

Warrior Woman Law,PLLC
569 Division Street, Suite D
Port Orchard, WA

vehicle collision must be at issue.  It is not.

The defense's own retained neuropsychological expert Dr. Howard Lloyd, Psy. D., in his report written and prepared with opinions and conclusions "stated herein are more probably than not based upon reasonable medical probability", concluded that "[t]he circumstances of his motor vehicle crash from 2017 and the symptoms he reported experiencing immediately following that incident are consistent with concussion or mild traumatic brain injury."[18]  *See also*, report from Plaintiff retained expert Dr. Martha Glisky concluding that "Mr. Norman suffered from a mild traumatic brain injury/concussive brain injury in the MVC that occurred on 02/03/17.  As a result, he has had the continue [sic] symptoms and diagnoses listed above. These were caused by the 02/03/17 MVC on a more probable than not basis."[19]

Because the Defendant's own neuropsychological expert has admitted that Mr. Norman sustained a traumatic brain injury (head biomechanical failure) in the motor vehicle collision, Mr. Probst's opinion about the forces involved and whether they could or could not have caused injury are irrelevant.  We know the forces involved caused injury to Mr. Norman based on the available medical records, opinion of Plaintiff expert Dr. Martha Glisky, and opinion of defense expert Dr. Howard Lloyd.  As such, Mr. Probst should be excluded.

---

intent is to attempt to testify beyond his scope of expertise as is evidenced by his failure to completely edit his attempt to provide medical causation testimony when he concludes on page 12 that "the subject incident lacked the energy necessary to create a mechanism for a causal relationship for Mr. Norman's post-concussion syndrome." *Id.*

[18]  Declaration of David LaCross, XX, Report of Dr. Howard Lloyd, pg. 10.
[19]  Declaration of David LaCross, XX, Report of Dr. Martha Glisky.

*PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE MR. PROBST*

LaCross and Murphy          Warrior Woman Law, PLLC
559 Bay Street              569 Division Street, Suite D
Port Orchard, WA            Port Orchard, WA

### 2. *Mr. Probst Should be Excluded Because He Lacks Medical Expertise Required to Testify to Causation*

It is a medical determination whether an incident caused a particular injury or physical disability.  The practice of medicine includes the diagnosis, advice, and treatment of human physical ailments, conditions, injuries, disease, pain, and infirmities. *See* RCW 17.71.011. The term "diagnose" is defined as "to determine the type and cause of a health condition on the basis of signs and symptoms of the patient."  Mosby's Medical Dictionary, 480 (5th ed. 1998). Thus, the question of causation of a human injury is a part of a diagnosis, which is in turn part of the practice of medicine.

Mr. Probst holds no health care credentials in any state.  He obtained a masters in Biomechanical Engineering from Tulane University.  Mr. Probst is wholly unqualified to diagnose an injury and based on the multitude of courts that excluded him from testifying to "injury" (or lack thereof), Mr. Probst knows he lacks the requisite qualification to testify to injury.  Therefore, in September 2012, Mr. Probst, in an attempt to disguise the fact that he is offering a medical opinion about causation of injury, replaced the word "injury" in his reports with the phrase "bio-mechanical failure."

Under FREV 702, a witness is permitted to testify to "scientific, technical, or other specialized knowledge," so long as the witness is qualified as an expert.  As noted in 29 *Wright & Gold, Federal Practice & Procedure Evidence* §6265 (West 1997) at pg. 255-56: "Even

where a witness has specialized knowledge or experience, qualification to testify as an expert also requires that the area of the witness's competence matches the subject matter of the witness's testimony." Thus, the courts have frequently precluded a witness from testifying as an expert where the witness has specialized knowledge on one subject but offers to testify on a different subject.

In *Smelser v. Norfolk Southern Railway* Co., 105 F.3d 299, 305 (6th Cir. 1996), *cert. denied*, 522 U.S. 817, 118 S.Ct. 67, 139 L.Ed.2d 29 (1997), *abrogated on other grounds by General Elec. Co. v. Joiner*, 522 U.S. 136, 143, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997), plaintiff proffered a mechanical engineer to testify that a shoulder belt, not a lap belt, failed in an automobile accident causing an injury. The Sixth Circuit found that the expert opinion as to causation should have been excluded because it went beyond his expertise in biomechanics and also lacked reliability. In that case the biomechanical engineer testified:

> . . . that biomechanics are qualified to determine what injury causation forces are in general and can tell how a hypothetical person's body will respond to these forces, but are not qualified to render medical opinions regarding the precise cause of a specific injury. . . .

*Id.* at 305.

Simply because a person in one profession comes into contact with similar structures or materials, they still may not be allowed to circumvent the requirement of medical opinions on causation of injury. For example, in *Goodwin v. MTD Products, Inc.*, 232 F.3d 600, 609

(7th Cir. 2000), the Seventh Circuit held that an engineer was not qualified to give an opinion that it was impossible for a wingnut to cause a particular type of eye injury that was suffered by the plaintiff. The Seventh Circuit in *Jones v. Lincoln Electric Co.*, 188 F.3d 709, 724 (7th Cir. 1999), also held that the trial court committed error, albeit harmless, by permitting an expert in material science and metallurgy to testify as to the health effects of manganese on the body.

Mr. Probst may intend to testify that his knowledge of crash testing, pilot ejection seats, or other computer modeling permits him to opine on injury (or "biomechanical failure"), but as in *Goodwin* and *Jones*, he simply cannot extrapolate that work to testify as a medical provider. Acceleration forces of a motor vehicle does not equal the sole causation factor to injury, and it is not a reliable method to determine whether this specific crash injured tis specific individual.

### 3. *Numerous Courts Have Excluded Mr. Probst's Opinions as Not Helpful*

Probst's opinions are unhelpful and confusing given the only issue remaining issue in dispute is the extent of Mr. Norman's injuries. Only helpful opinion testimony is allowed under ER 702. Here, Probst's opinion disputing causation of Mr. Norman's "biomechanical failures" is at odds with medical opinions which will be offered at trial. Probst's unqualified opinions disputing causation, opinions that contradict the qualified medical testimony, will not help the trier of fact decide the extent of Mr. Norman's collision related injuries. *See Gilmore*,

*PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE MR. PROBST*
Page 11 of 13

LaCross and Murphy
559 Bay Street
Port Orchard, WA

Warrior Woman Law,PLLC
569 Division Street, Suite D
Port Orchard, WA

190 Wn.2d at 506. In *Gilmore*, Justice Yu gave clear direction in her concurrence that, although they did not have to decide on the issue in the opinion, that **it would be unhelpful to the jury and abuse of discretion to admit** biomechanical testimony when extent of the injuries is the only remaining issue. *Id.* As such, these opinions are unhelpful and inadmissible under ER 702. *See Id.*; *see also Stedman*, 172 Wn. App. at 20-21 (adopting reasoning of *Schultz v. Wells*, 13 P.3d 846, 852 (Colo. Ct. App. 2000) (excluding evidence from biomechanical engineer on force of impact as misleading).

## VI. CONCLUSION

Mr. Probst should be excluded as he lacks the medical expertise to testify to causation. His testimony is not relevant, and clearly not helpful to the trier of fact.

Dated this 3rd day of October 2022.

Respectfully Submitted.

David LaCross
Attorney for the Plaintiff

*PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE MR. PROBST*
Page 12 of 13

LaCross and Murphy
559 Bay Street
Port Orchard, WA

Warrior Woman Law,PLLC
569 Division Street, Suite D
Port Orchard, WA