

*"Representing Quality Physicians"*

**Corporate Office**
406 Yauger Way SW Suite A
Olympia, WA 98502
Phone (360) 867-4188
Fax (360) 867-0466
pds@physiciandirectservices.net

# Howard A. Lloyd, Psy.D, ABPP-CN
## Board Certified Clinical Neuropsychologist

September 9, 2022

S. Karen Bamberger
Attorney at Law
Betts Patterson Mines
One Convention Place
701 Pike Street, Suite 1400
Seattle, Washington 98101-3927

| | |
|---|---|
| Claimant: | **Brad Norman** |
| Date of Loss: | **February 3, 2017** |
| Date of Evaluation: | **August 13, 2022** |

Dear Ms. Bamberger:

Please review the enclosed **CR35 Evaluation** report which was produced to document the evaluation that was performed on August 13, 2022. The evaluation was performed by Howard A. Lloyd, Psy.D., ABPP-CN, Board Certified Clinical Neuropsychologist.

The examinee was informed that this examination was scheduled at your request, that a written report would be sent to you, and that the examination was for evaluative purposes only.

The examinee was informed that the purpose of the evaluation was to address specific injuries or conditions and that it was not meant to constitute a general medical examination. The examinee was told that the evaluation was not a substitute for an appointment with a personal physician(s) or medical care.

The examinee was instructed at the time of the evaluation not to engage in any physical maneuvers beyond what could be tolerated, which might exceed personal limits, or may cause physical harm or injury.

Please review the following report:

**S. Karen Bamberger**                                                  **Re: Brad Norman**
**Attorney at Law**                                                           **Page #2**
**September 9, 2022**

## NEUROPSYCHOLOGY CONSULTATION

**PATIENT NAME:** Norman, Brad

**DATE OF LOSS:** 2/3/2017
**CLAIM #**: E3B8794
**DATE OF EVALUATION:** 8/13/2022
**EVALUATION LOCATION:** 7808 Pacific Ave Suite 6, Tacoma, WA
**START TIME:** 9:02
**END TIME:** 14:52
**DATE OF REPORT:** 9/3/2022
**REFERRAL SOURCE:** Physician Direct Services for S. Karen Bamberger

**REASON FOR REFERRAL:** Mr. Norman as a 63-year-old, right-handed, Caucasian man who was involved in a motor vehicle crash on 2/3/2017, who is alleging persisting cognitive difficulties secondary to a presumed mild traumatic brain injury. He was referred for this evaluate to assess his current neuropsychological status and provide input concerning any improvement or lingering difficulties that might be attributable to the above referenced injury.

**REVIEW OF RECORDS:**
Please see the record review dated May 9, 2022 for details concerning Mr. Norman's motor vehicle crash and his subsequent treatment. This review also includes discussion of two prior neuropsychological evaluations completed by Martha Glisky, PhD, ABPP-CN in September 2018 and January 2020. The results of the current evaluation were compared with these previous evaluations.

**RELEVANT MEDICAL HISTORY:** The following information was obtained in the course of a clinical interview with Mr. Norman that lasted approximately two hours. This represents his recollection and description of the circumstances surrounding the motor vehicle crash and his report concerning the subsequent effects of that incident. Of note, Mr. Norman's recollections were consistent with what he reported in his depositions and evaluation with Dr. Glisky.

Mr. Norman indicated that on the day of the incident he was traveling on US 101 returning from a job in Forks. He was going downhill when an approaching vehicle attempted to pass while traveling uphill. Mr. Norman estimated that he other vehicle was traveling between 40 and 50 mph. His last memory prior to impact was of seeing the approaching vehicle in his lane; "all of a sudden the car was there and then it hurt it was just, pain." He believes he lost consciousness briefly, estimating that it was less than a minute. Mr. Norman cannot recall if he struck the steering wheel or windshield as a result

**S. Karen Bamberger**                                                                   **Re: Brad Norman**
**Attorney at Law**                                                                           **Page #3**
**September 9, 2022**

of the impact; "I don't know what I did or didn't hit." He was wearing his seatbelt and being "lunged forward very hard...I was definitely rattled." Mr. Norman's first memory after the impact was of feeling pain in his low back and asking his passenger/coworker how he was. He recalls doing a "self-assessment" before exiting the vehicle and checking for damage and fuel leaks. Mr. Norman recalls that he could not move his vehicle off the road and he believes that it partially blocked the lane. He also remembers calling his wife and informing her of the accident. An Olympic National Park Ranger was the first official vehicle on the scene and arrived before the fire department or aid vehicle. When the aid vehicle arrived Mr. Norman recalls that it was there for only a few minutes. After asking everyone involved in the accident if they were okay it left to respond to another accident. Mr. Norman indicated that he was at the scene for between 1.5 and 2 hours before his wife and a tow truck arrived.

Mr. Norman reported that he began noticing memory problems immediately after the accident; "the memory thing was immediate, I noticed it right away." He recalls his wife telling him that his speech was slurred that he had not noticed that change. He was seen by his chiropractor a few days after the accident for low back pain and headache. He remembers feeling nervous about resuming driving after the accident. Mr. Norman stated that he did not "feel well" but also did not "feel horrible" for several days after the crash. He remembers seeing a "specialist" after the accident; "they told me there was nothing they could do." Mr. Norman confirmed that the "specialist" in question was a neurologist, Dr. Rubinstein who he saw in August 2017. He indicated that he has not received any cognitive rehabilitation therapy or speech therapy services for cognitive rehabilitation. Mr. Norman indicated that he has done some reading about the impact of mild brain injury on memory and has concluded; "I can't function any better but I can alternatively cope."

**SOCIAL HISTORY:** Mr. Norman was born and raised in Southeast Texas where he lived with his family until he was about 10 years old when his parents divorced. He moved with his mother to Washington where he graduated from high school. Mr. Norman reported no history of learning problems. He is the oldest of three children and has two younger brothers both of them live in Sequim. He lives with his third wife and has three adult children, two daughters and a son.

**MEDICAL HISTORY:** Mr. Norman reported that his only chronic medical issues is hypertension for which she takes lisinopril. He also takes an anti-inflammatory for his needs. He denied any psychiatric history. Mr. Norman acknowledged a history of physical abuse as a child. His mother reportedly had depression as does one of his brothers. Mr. Norman does not use tobacco or marijuana. He occasionally drinks alcohol, but not on a regular basis. He has a history of periodic back pain that is managed with chiropractic care. He also has bilateral knee pain which is aggravated by increased

**S. Karen Bamberger**                                                                                **Re: Brad Norman**
**Attorney at Law**                                                                                           **Page #4**
**September 9, 2022**

physical activity. Mr. Norman recalled being struck on the head by a fence post which occurred after his motor vehicle crash. He described this as a "glancing below" that cut his scalp but did not cause any headache or worsening of his existing memory difficulties. He went to the emergency department and his scalp one was stapled.

**CURRENT COGNITIVE & FUNCTIONAL STATUS:** Mr. Norman reports persisting memory difficulties; it's a memory issue as quickly as it goes and it goes away in a nanosecond ,and is just very disheartening." He has developed strategies to compensate for his memory problems and indicated that cues and prompts help him recall information. However, he misses details on bids and sometimes forgets to finish work-related paperwork. He has adopted a strategy of telling people about his memory issues and asking them to call him and remind him if he does not follow up as expected. Mr. Norman uses his phone to keep track of things he needs to remember; "it's my nightmare friend." Despite this, he will still forget things and reported that the day before this evaluation he forgot to show up for a job. He indicated that this type of forgetfulness occurs several times a month. He will remember the jist of conversations but not the details unless he is given cues. His wife reminds him to take his medications because he forgets his medicine nearly every night; "I don't remember that for nothing." Mr. Norman indicated that he can be distracted if he is interrupted. This will cause him to forget what he was intending to do. In the absence of interruptions he is able to concentrate as long as he needs to complete tasks. When he does get distracted he is able to eventually return to the task. Mr. Norman denied any problems expressing himself verbally. However, he sometimes struggles to understand what others are saying, but he noted that he may simply be more uncertain about how well he understands. Mr. Norman is independent with self-care. He manages the household and business finances without difficulty. He is also able to complete household tasks. Mr. Norman continues to drive but has been feeling more anxious about driving; "I'm overly cautious," particularly when another car is approaching him. He has got himself driving to the wrong location and will sometimes make the wrong turn.

Mr. Norman uses reading glasses and reported no significant sensory changes. He also denied any problems with balance, coordination, weakness, or numbness.

Mr. Norman owns and operates a concrete cutting business. He indicated that from a financial standpoint the business is doing "fine." He has been avoiding certain aspects of this work because he worries he will forget needed safety procedures; "I don't want to forget something and cause an accident." Mr. Norman indicated that these safety procedures should be over learned and automatic such as setting anchors. However he feels that if he becomes distracted during the process he may forget a critical step. "I'm not trusting myself with the procedures that are required." Consequently, he has been spending less time in the field which he has always enjoyed. His employees have told

**S. Karen Bamberger**                                                             **Re: Brad Norman**
**Attorney at Law**                                                                       **Page #5**
**September 9, 2022**

him that he tends to be more irritable on the jobsite which Mr. Norman indicated is out of character; "I'm usually pretty easy-going." Mr. Norman manages all of the business billing and is responsible for bidding jobs. He also prepares equipment lists for jobs but has been delegating more responsibility to his employees. Mr. Norman indicated that he had been considering retiring but after taking a 90 day road trip, which was initially planned to last on 30 days, last year he realized that he did not want to completely retire. He now feels that he will be more comfortable semiretired.

**NEUROBEHAVIORAL STATUS EXAMINATION:** Mr. Norman was appropriately groomed and casually dressed. He was alert and fully oriented and understood and accepted the reason for this evaluation. His spontaneous speech was fluent with normal rate and tone. There was no word finding or comprehension difficulty. He was attentive and exhibited no overt signs of distractibility. Memory for recent and remote personal information appeared good. As noted above, his recall of the events surrounding the motor vehicle crash and his subsequent symptoms and treatment was consistent with his statements in deposition and in his evaluation with Dr. Glisky. Mood was described as irritable. Affect was appropriate. Mr. Norman continues to engage in activities he enjoys. He reported no change in appetite but acknowledged that he needs to eat more regularly. Mr. Norman reported problems with sleep characterized by initial insomnia and middle of the night awakening with difficulty returning to sleep. He stated that he will often wake up in the night worrying that he has forgotten something important. He estimated that he sleeps about 6 hours per night "if I'm lucky." Mr. Norman is not often fatigued during the day. He acknowledged some feelings of hopelessness and helplessness, but stated that he can alter his thinking when he experiences these feelings. He did not explicitly acknowledge feeling useless or worthless but stated; "I feel diminished, I feel less than." Mr. Norman has no difficulty concentrating but indicated that making decisions is a little more difficult. He tends to run things by his coworkers more often because he questions himself. Mr. Normal acknowledged some suicidal ideation in recent weeks when he thinks about "what burden am I putting on the people around me." However, he stated that these thoughts are fleeting and denied any active plan or intent to harm himself. He reported anxiety about driving, making errors in the job, and letting people down. Thought processes were linear and coherent with no evidence of hallucinations or delusions. Insight and awareness appeared good. Judgment seemed good.

**BEHAVIORAL OBSERVATIONS:** Mr. Norman was pleasant and cooperative during the formal assessment process. He was casually dressed but his jeans were torn. He ambulated independently. Mr. Norman wore reading glasses and had no problems hearing. An adequate level of rapport was established and maintained. He understood and followed directions without difficulty. Mr. Norman did not make any comments about tests seeming familiar from his previous evaluations. He was appropriately motivated and

**S. Karen Bamberger**                                    **Re: Brad Norman**
**Attorney at Law**                                        **Page #6**
**September 9, 2022**

put forth persistent effort. Results from embedded and freestanding performance validity measures were within acceptable limits. This evaluation proceeded without difficulty. The results obtained appear to accurately reflect Mr. Norman's current neuropsychological status.

**TESTS ADMINISTERED:** *Wechsler Adult Intelligence Scale-Fourth Edition (selected subtests: Vocabulary, Digit Span, Block Design, Symbol Search, Coding), Wechsler Memory Scale-Fourth Edition (Selected Subtests: Visual Reproduction, Logical Memory, Symbol Span), California Verbal Learning Test-Second Edition, Rey Complex Figure Test*, Digit Vigilance Test (DVT), Brief Test of Attention, *Trail Making Test Parts A and B*, Delis-Kaplan Executive Function System (Verbal Fluency Test, Color-Word Interference Test), MINI International Neuropsychiatric Interview, Minnesota Multiphasic Personality Inventory-2 Restructured Form (MMPI-2-RF).

Items in italics were repeated from the 2018 evaluation.

**TEST RESULTS:**
(Descriptor Key based on American Academy of Clinical Neuropsychology uniform labeling of test scores consensus conference statement: Exceptionally High >98th percentile, Above Average 97th-91st percentile, High Average 90th-75th percentile, Average 74th-25th percentile, Low Average 24th-9th percentile, Below Average 8th-2nd percentile, Exceptionally Low <2nd percentile).

**Attention and Concentration:** Mr. Norman's attention ranged from exceptionally high to average. His auditory attention exceptionally high (WAIS-IV Digit Span: <99th percentile). He was able to recall 9 digits forward, 8 backward, and sequence 6 digits in ascending order. Auditory divided attention (tracking numbers and letters heard on a recording) was in the high average range (75th percentile). Span of attention for an array of abstract symbols average (50th percentile). Performance on a task requiring sustained concentration and graphomotor speed was average (Coding: 50th percentile). On a task requiring visual scanning and target identification performance was high average (Symbol Search: 84th percentile). Sustained visual attention requiring a combination of speed and accuracy to detect a target number (i.e. 6's) was average for accuracy and high average for speed (DVT; 66th and 84th percentile respectively). On a task requiring visual scanning and sequencing (Trails A) performance was exceptionally high (98th percentile). Overall, these results reflected above average to exceptionally high auditory attention and average to high average visual attention. These results were consistent with previous testing done in 2018 for auditory attention. Improvement was seen on the Symbol Span subtest but otherwise visual attention remained stable.

**S. Karen Bamberger**  **Re: Brad Norman**
Attorney at Law  Page #7
September 9, 2022

**Language Functioning:** Mr. Norman's spontaneous speech was fluent, with normal rate and prosody. There was no evidence of word-finding difficulty or paraphasic or word use errors during normal conversation. Expressive vocabulary (i.e. ability to define words) was average (63rd percentile). Phonemic verbal fluency (i.e. generating lists of words beginning with specific letters) was exceptionally high ($>99^{th}$ percentile). Semantic verbal fluency (i.e. generating words from specific categories) was average (63rd percentile). Single Confrontation naming (i.e. ability to name pictures of objects) high average (76th percentile). Overall language functioning was in the average to exceptionally high. This represented no significant change compared with prior testing.

**Memory and Learning:** Immediate recall of verbal material presented in a prose format (i.e. *WMS-IV* Logical Memory) was below average (2nd percentile). Delayed recall for this material was also below average (5th percentile). Recognition testing resulted in improved recall for the details from the stories and was in the average range (26th-50th percentile). Mr. Martin's visual memory was average for immediate recall of five simple to moderately complex two-dimensional geometric designs (i.e., *WMS-IV* Visual Reproduction: 50th percentile). Delayed recall for these designs was low average (9th percentile). Recognition testing resulted in improved recall for these designs (51st-75th percentile).

Performance on a 16 item list-learning task (i.e. CVLT-II Standard Form) was notable for a high average learning curve (4/16, 7/16, 11/16, 9/16, and 10/16 items, respectively). Total amount of information learned was average (50th percentile). Spontaneous recall following an interference list was average (8/16; 50th percentile). Cueing improved recall into the exceptionally high range (13/16; 84th percentile). Delayed spontaneous recall was average (9/16; 50th percentile). Cueing did not improve recall (10/16; 50th percentile). Recognition testing also did not significantly improve recall (12/16; 7th percentile).

Incidental memory (i.e. memory for information he was not told to remember) for a complex geometric design (i.e. Rey Complex Figure) was low average (16th percentile). Delayed recall for this design was below average (2nd percentile). Recognition testing for the elements of this design improved recall and was in the low average range (10th percentile).

Mr. Norman's performance on multiple memory measures primarily reflects decreased initial learning efficiency for verbal and complex visual information. Repetition resulted in improved memory for verbal material. What was successfully learned was retained. Recognition testing consistently resulted in improved recall, though this improvement was rather modest for complex visual information. These results indicate that Mr. Norman is able to learn and retain information but may have some difficulty effectively retrieving all of the information he has learned. These results were consistent with

**S. Karen Bamberger**                                                                  **Re: Brad Norman**
**Attorney at Law**                                                                                  **Page #8**
**September 9, 2022**

previous testing reflecting no significant change in memory functioning compared with the results from 2018.

**Visuospatial/Perceptual Functioning:** Mr. Norman's visual perceptual abilities ranged from exceptionally low to average. Spatial problem solving (i.e. arranging blocks to match a target picture) average (50th percentile). Complex design copying was exceptionally low (<1st percentile). His approach to this task was poorly organized and he generated a mildly distorted copy of the design.

Mr. Norman's performance on these visual spatial tasks was consistent with previous testing completed in 2018.

**Frontal/Executive Functioning:** Mr. Norman's performance on executive functioning measures was consistent with previous test results. Mental processing speed (WMS-IV Processing Speed Index) was average (70th percentile). Visual scanning and sequencing abilities were exceptionally high (Trails A: 98th percentile). When a set shifting demand was added performance was in the average range (Trails B: 69th percentile). Phonemic verbal fluency (i.e. generating lists of words beginning with specific letters) was exceptionally high (<99th percentile). Semantic verbal fluency (i.e. generating words from specific categories) was average (63rd percentile). When a set shifting demand was added to the semantic verbal fluency task performance was above average (95th percentile). Response inhibition (i.e. naming the color ink used to print color names) was above average for speed (95th percentile) and average for accuracy (63rd percentile). When a set shifting demand was added speed was above average (91st percentile) and accuracy was average (63rd percentile).

**Psychological/Emotional Functioning:** Mr. Norman completed the Minnesota Multiphasic Personality Inventory-2-RF (MMPI-2-RF) to assess his overall psychological and emotional adjustment. A forensic, litigant/claimant comparison group was used for comparison purposes. Mr. Norman's responses to the MMPI-2-RF was generally consistent with this comparison group. Examination of the validity scales indicated that he understood the item content and answered in a consistent manner.  There was no evidence of systematic over or underreporting symptoms and the results were judged to be valid and interpretable. However, responses to one of these validity scales (L-r: Uncommon Virtues) was somewhat elevated which is often an indication that and individual holds very traditional values and may be less inclined to admit to common shortcomings which can suppress the substantive scales.  Examination of the Restructured Clinical scales did not reveal any significant scale elevations. However, low scores on some of the RC scales provided relevant clinical information. Mr. Norman's case he obtained lower than typical scores on RC3 (Cynicism) and RC9 (Hypomanic Activation). These lower-than-expected scores suggest that he may have a tendency to be

**S. Karen Bamberger**  Re: **Brad Norman**
Attorney at Law  Page #9
September 9, 2022

overly trusting and inclined to view others as well-intentioned and trustworthy. Additionally, he appears to have a lower than expected level of energy and reduced engagement in the environment. This can be a manifestation of some depressive tendencies despite his average score on a more traditional depression related scale (RC2 - Low Positive Emotions). Review of the remaining substantive scales revealed significant elevation on MLS (Malaise) which is associated with a sense of poor health as well as feeling weak and tired. Significant elevation was also seen on the SUI (Suicidal/Death Ideation) scale, which is the name implies is associated with report of suicidal thoughts. Mr. Norman responded true to the following statements: "I recently considered killing myself" and "I thoughts these days turn more and more to death and the life hereafter." His endorsement of these two items accounts for the elevation on the SUI scale and is consistent with his report during the clinical interview. It should again be noted that he denied any active suicidal ideation or intent. Nevertheless, endorsement of these items suggests that Mr. Norman may be struggling with some underlying depression.

**MINI International Neuropsychiatric Interview:** At the conclusion of the unstructured clinical interview this structured diagnostic interview was administered. Mr. Norman's responses to this interview did not reveal the presence of any major psychiatric diagnoses.

**IMPRESSION:**
The results of this evaluation were notable for evidence of some inefficiency initially learning new verbal and complex visual information. Mr. Norman effectively retained the information he learned and clearly benefited from repetition. On tests where information was presented on a single trial learning bases his recall for this information improved with recognition testing, indicating some retrieval difficulties. With the exception of exceptionally low performance on a complex design copying task, Mr. Norman's performance across all other cognitive domains was consistently in the average to high average range with performance in some areas in the above average to exceptionally high range.

The current test results were compared with results from Dr. Glisky's 2018 and 2020 evaluation of Mr. Norman. It is important to note that in her 2020 Dr. Glisky chose to administer alternate forms of two memory tests (i.e. CVLT-II Alternate Form; Taylor Complex Figure) rather than re-administering the same forms given in 2018. While this is not especially problematic for the CVLT-II, substituting the Taylor Complex Figure for the Rey Complex Figure is problematic in that the two figures are not comparable with regard to level of difficulty for either copy or recall (e.g. [Tombaugh, Faulkner, & Hubley, 1992](#); [Yamashita, 200](#)6). Although a more complex form of the Taylor figure was developed (Modified Taylor Complex Figure), this has also been shown not be equivalent to the Rey figure particular for older adults (Hubley, 2010) and it was not the form used

S. Karen Bamberger
Attorney at Law
September 9, 2022

Re: Brad Norman
Page #10

**S. Karen Bamberger**                                                                          **Re: Brad Norman**
**Attorney at Law**                                                                                     **Page #10**
**September 9, 2022**

by Dr. Glisky in her 2020 reevaluation of Mr. Norman. As such, Mr. Norman's performance on these two very different complex figure copying and memory tasks should not be considered comparable. On current testing his performance on the Rey Complex Figure was consistent with the original 2018 results when Dr. Glisky administered this same test. Thus, it is probably more accurate to conclude that there has been no change in Mr. Norman's complex design copying and memory abilities since his original evaluation in 2018. Similarly, there was no significant difference in his performance on the CVLT-II across the three evaluations. When the tests administered by Dr. Glisky in 2018 were repeated as part of the current evaluation that were directly compared, there is only one test where there was a statistically significant difference in test performance (i.e. Symbol Search). On this measure of visual scanning and target detection Mr. Norman showed significant improvement in his performance. Otherwise there was essentially no significant difference in Mr. Norman's performance in 2018 compared with current testing.

Overall, the current pattern of results suggests stable neurocognitive functioning compared with testing completed in 2018. Mr. Norman has demonstrated some improvement in aspects of visual scanning and processing speed abilities, but generally his test scores were very consistent across the two evaluations. He is continuing to experience some lingering memory difficulties, and isolated visual construction problems. Functionally, Mr. Norman has been able to continue to run his business and stated that the business is doing fine from a financial standpoint. Although he has modified his role in the business, he continues to manage day-to-day operations, perform bids for new jobs, prepare equipment lists for jobs, and complete the billing. He has reduced the amount of direct involvement he has on the jobsite because of his concerns that he might forget important safety procedures.

The circumstances of his motor vehicle crash in 2017 and the symptoms he reported experiencing immediately following that incident are consistent with concussion or mild traumatic brain injury. However, the vast majority of individuals who experience such injuries recover fully within a matter of weeks or months. It is extremely uncommon for people to have long-term lingering difficulties following injury of this type (McCrea, 2008). In those cases where prolonged symptoms are reported litigation is often a factor (Binder & Rohling 1996; Baydan et. al. 2018; Hanks et.al. 2019). Psychological factors can also contribute to persisting cognitive difficulties. Mr. Norman acknowledged some depression related symptoms during this evaluation. Additionally, his responses to the MMPI-2-RF suggest that he may be experiencing unrecognized depression symptoms manifested in reduced energy and decreased engagement. Dr. Glisky diagnosed Unspecified Adjustment Disorder in both 2018 and 2020. This appears to be a reasonable diagnoses particularly since Mr. Norman seemed somewhat reluctant to fully acknowledge the degree of psychological distress he may be experiencing. Of note, Mr.

S. Karen Bamberger                                                                                       Re: Brad Norman
Attorney at Law                                                                                                  Page #11
September 9, 2022

Norman reported a family history of depression in his mother and a brother. Since he is now over five years postinjury his persisting cognitive difficulties are, on a more probable than not basis, judged to be secondary to persisting psychological adjustment issues as opposed to any lingering effects from a traumatic brain injury. It is also important to note that Mr. Norman has never received any type of cognitive rehabilitation therapy that might have helped him develop strategies for compensating for his memory difficulties and thereby improve his confidence in his abilities to manage the demands of his job.

This report was prepared by me and is true and correct to the best of my knowledge. The opinions and conclusions stated herein are more probably than not based upon reasonable medical probability.

I, Howard A. Lloyd, Psy.D., ABPP-CN, declare under the penalty of perjury under the laws of the State of Washington that the following is true and correct:

1. I am over the age of 18 years, I am competent to testify, and have personal knowledge of the facts contained herein in this declaration.

2. I declare that the CR35 evaluation report of Brad Norman was prepared by myself and is true and correct to the best of my knowledge.

3. On August 13, 2022, I performed an examination on Brad Norman, and I reviewed his medical records.

4. The opinions and conclusions stated herein are stated on a more-probable-than-not basis and to a reasonable degree of medical certainty.

Thank you for allowing me to participate in the evaluation of this particular individual. If I can be of any further assistance, please contact me through Physician Direct Services.

Sincerely,

*[signature: Howard a. Ll. Psy.D ABPP-CN]*

Howard A. Lloyd, Psy.D., ABPP-CN
Board Certified Clinical Neuropsychologist

HAL/qt/rms

**S. Karen Bamberger**                                                               **Re: Brad Norman**
**Attorney at Law**                                                                        **Page #12**
**September 9, 2022**

**REFERENCES:**

Bayen E., Jourdan C., Ghout I., Pradat-Diehl P., Darnoux E., Nelson G., Vallat-Azouvi C., Charenton J., Aegerter P., Ruet A., Azouvi P. Negative impact of litigation procedures on patient outcomes four years after severe traumatic brain injury: results from the PariS-traumatic brain injury study. *Disability and Rehabilitation.* 40(17: pg. 2040-2047.

Binder L.M., Rohling M.L., Money matters: A meta-analytic review of the effects of financial incentives on recovery after closed head injury. *American Journal of Psychiatry.* 1996; 153: pg.7-10.

Hanks R.A, Rapport L.J, Seagly K, Millis S.R.,Scott C., Pearson, C . Outcomes after Concussion Recovery Education: Effects of Litigation and Disability Status on Maintenance of Symptoms. *Journal of Neurotrauma.* 2019 36(4).

Hubley, A. Using the Rey–Osterrieth and Modified Taylor Complex Figures with Older Adults: A Preliminary Examination of Accuracy Score Comparability. *Archives of Clinical Neuropsychology*, 2010, 25(3): pg. 197–203

McCrea, M.A. Mild Traumatic Brain Injury and Postconcussion Syndrome: The New Evidence Base for Diagnosis and Treatment. 2008, Oxford University Press, New York.

Tombaugh T. N., Faulkner P., Hubley A. M. Effects of age on the Rey–Osterrieth and Taylor Complex Figures: Test–retest data using an intentional learning paradigm, *Journal of Clinical and Experimental Neuropsychology*, 1992 vol. 14: pg. 647-661.

Yamashita H. Comparability of the Rey–Osterrieth Complex Figure, the Taylor Complex Figure, and the Modified Taylor Complex Figure in a normal sample of Japanese speakers *Psychological Reports*, 2006 vol .99: pg. 531-534.

Dictated using Dragon voice recognition software.  Please note that although the content of this report was reviewed, errors may remain due to the variable accuracy of computer dictation programs.