# Deposition of Bradley Probst

# Rodriguez v. Hernandez, et al.

# October 5, 2021



**206.287.9066 | 800.846.6989**

1325 Fourth Avenue, Suite 1840, Seattle, Washington 98101

**www.buellrealtime.com**

email: info@buellrealtime.com



Rodriguez v. Hernandez, et al.                                        Bradley Probst

---

**Page 1**

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

LAZARO RODRIGUEZ, an           )
individual,                    )
                               )
        Plaintiff,             )
                               )
    v.                         )
                               ) No. 19-2-09925-31
EFRAIN HERNANDEZ and JANE DOE  )
HERNANDEZ, and the marital     )
community comprised thereof;   )
DLM, INC.,                     )
                               )
        Defendants.            )

VIDEOCONFERENCE DEPOSITION UPON ORAL EXAMINATION

OF

BRADLEY PROBST

(All parties appearing via videoconference)

DATE TAKEN:  OCTOBER 5, 2021
REPORTED BY:  CRYSTAL HEREFORD, RPR, CCR 21004877

---

**Page 2**

```
 1
 2            A P P E A R A N C E S
 3   FOR PLAINTIFF VIA VIDEOCONFERENCE:
 4           SUNSHINE M. BRADSHAW, ESQ.
             WARRIOR WOMAN LAW, PLLC
 5           569 Division Street
             Suite D
 6           Port Orchard, Washington 98366
             360.550.5276
 7           sunshine@warriorwomanlaw.com
 8
             DAVID LaCROSS, ESQ.
 9           LaCROSS & MURPHY, PLLC
             559 Bay Street
10           Port Orchard, Washington 98366
             360.895.1555
11           fdlacross@gmail.com
12
     FOR DEFENDANTS:
13
             LISA A. LIEKHUS, ESQ.
14           LILY YEE, ESQ.
             LAW OFFICES OF MARK DIETZLER
15           1001 Fourth Avenue
             Suite 3300
16           Seattle, Washington 98154
             206.473.4016
17           lisa.liekhus@libertymutual.com
18
19
20           * * * * *
21
22
23
24
25
```

---

**Page 3**

```
 1          DEPOSITION OF BRADLEY PROBST
 2              EXAMINATION INDEX
 3
 4   EXAMINATION BY                      PAGE
 5   Ms. Bradshaw. . . . . . . . . . . . . .  5
 6
 7
 8
 9
10              EXHIBIT INDEX
11   EXHIBITS     FOR IDENTIFICATION      PAGE
12   Number 1    5/4/21 Report            --
13   Number 2    Professional Biographical Outline    9
14
15
16
17
18
19
20
21
22
23
24
25
```

---

**Page 4**

```
 1         VIA VIDEOCONFERENCE; OCTOBER 5, 2021
 2                 12:57 P.M.
 3                  -oOo-
 4
 5         THE REPORTER:  We will go on the record.
 6         Will counsel please announce your
 7   appearance, as well as anyone appearing with you, and
 8   stipulate to the remote swearing of the witness,
 9   beginning with the taking attorney.
10         MS. BRADSHAW:  This is Sunshine Bradshaw.
11   I'm counsel for Plaintiff Lazaro Rodriguez.  I give my
12   permission to swear the witness remotely.
13         THE REPORTER:  Thank you.
14         MS. LIEKHUS:  Hi.  This is Lisa Liekhus,
15   and I represent the defendants.  And you have my
16   permission to swear the witness remotely as well.
17         THE REPORTER:  And we have two more people
18   appearing.  Could you please announce your appearances?
19         MR. LaCROSS:  David LaCross, co-counsel on
20   behalf of the plaintiff.
21         THE REPORTER:  Thank you.
22         MS. YEE:  Good afternoon.  Lily Yee on
23   behalf of Defendants.
24         THE REPORTER:  Thank you.
25         Mr. Probst, would you raise your right
```

---

1 (Pages 1 to 4)

Rodriguez v. Hernandez, et al.                                    Bradley Probst

Page 13

1  brutalization of how I pronounced it.
2      A.  Sure.  It's just a -- I guess a more scientific
3  way of saying how a human would move or how a human would
4  respond to forces or loading on the body, how it would
5  move in response.
6      Q.  "Biomechanical failure."
7      A.  Simply that it's a mechanical failure of
8  biologic tissue.
9      Q.  That doesn't mean anything to me.  Can you give
10  me a little bit more?  Can you use it in a little bit
11  more -- because obviously, I've -- I've Googled.  I've
12  Googled a definition of "biomechanical failure," and I
13  didn't come up with anything that I really understood.
14  So perhaps you could help me understand a little bit
15  better.
16          Without using the same terms, right?  I'm
17  asking you to define "biomechanical failure."  So if you
18  could define those terms without using, you know,
19  "biomechanical failure," that would be great.
20      A.  It's kind of hard not to define something
21  without defining something.  But it's pretty basic,
22  pretty simplistic.  It's mechanical failure.  Something
23  has broken.  And it's a biologic material.  It's a
24  biomaterial -- biomechanical or biomedical failure.  You
25  break a bone, you have caused some kind of mechanical

Page 14

1  failure to biologic tissue.
2      Q.  So those of us that are less educated than you
3  might call that an injury?
4      A.  I would ask you to define "injury."  Again, I
5  don't know in what context you might be utilizing that,
6  and it's a very vague term that is not really a precise
7  use of language.
8      Q.  Do you mean injury when you talk about
9  biomechanical failure?
10      A.  Nope.
11      Q.  Okay.  What's the difference when you talk
12  about a broken bone being a biomechanical failure and a
13  broken bone being an injury?
14      A.  I don't use the term "injury" because it lacks
15  precision of language.  And as I just said -- and you
16  have failed to define it -- it's meaningless in that
17  sense.  So I can't compare one to the other until you
18  define what you mean by an injury.
19          And, again, it's imprecise language.  If you
20  look it up, I think it simply says "to cause harm."
21  That's very vague.  So we're only using precision of
22  language, trying to define specifically what is being
23  discussed when we're talking about a biomechanical
24  failure.
25      Q.  And I certainly appreciate your attention to

Page 15

1  detail and dedication to precision.  What I mean by
2  injury -- and I'm going to quote here, because this is
3  the definition -- hurt, damage, or loss sustained.
4      A.  Right.  You can hurt somebody's feelings, and
5  that really doesn't tell you much about anything.  So,
6  again, it doesn't actually give you any precision of
7  what's being hurt.
8      Q.  So you just don't use the term "injury" at all
9  in your vocabulary.
10      A.  Not in the context of a biomedical analysis,
11  no.
12      Q.  Would that be improper?
13      A.  Oh, I've used it before.  Because, again, just
14  like you said, you have no knowledge of that term, and to
15  try to be kind to some people, like, well, let's use some
16  colloquialisms.  But then it opens a whole different can
17  of worms, because then people misinterpret a variety of
18  things like that.  So now I simply choose to use
19  biomechanical failure because it is precision of
20  language.  It's trying to be very precise in what is
21  being analyzed, what is being stated.
22      Q.  And it has nothing to do with courts excluding
23  you from testifying about injuries?
24          MS. LIEKHUS:  I'm going to object;
25  argumentative.

Page 16

1          THE WITNESS:  Nope, not at all.
2      Q.  (BY MS. BRADSHAW:)  It's just a coincidence
3  that after 15 or 20 courts excluded you from testifying
4  you went through all of your reports and got rid of the
5  term "injury" and substituted "mechanical failure"?
6          MS. LIEKHUS:  Objection; argumentative,
7  form.
8          THE WITNESS:  No.  It has nothing to do
9  with that.  As I said, just like you yourself had no
10  knowledge or background or idea of what a biomechanical
11  failure was -- again, if I were to use that, it would
12  create confusion.  But you can also see just by your own
13  definition of "injury," meaning it's just harm, that's
14  not of any use either.
15          So I'm kind of torn between having lots of
16  confusion or saying "I'm sorry.  You should be able to
17  look up this term and understand it."  But it still
18  creates issues.  But it has nothing to do with any court
19  or court rulings or anything like that.
20      Q.  (BY MS. BRADSHAW:)  Definition of "normal
21  physiological operation."
22      A.  I don't think I used the term "operation"
23  anywhere in my report.
24      Q.  Page 2 of your supplemental report.  "We again
25  reiterate that the subject incident would have resulted

4  (Pages 13 to 16)

BUELL REALTIME REPORTING, LLC
206.287.9066  I  800.846.6989

Rodriguez v. Hernandez, et al.

Bradley Probst

Page 53

1 collision, 3 Gs of force. Let's even say rear-end. A
2 rear-end motor vehicle collision, 3 Gs of force, is it
3 possible for an individual to be injured?
4         MS. LIEKHUS: Object to form.
5         You can go ahead and answer.
6         THE WITNESS: You've not -- not offered
7 any specifics. You haven't said what the individual is.
8 You haven't given a pulse duration, any preexisting
9 trauma that might exist, tolerance levels, safety
10 equipment. You've offered nothing.
11    Q.    (BY MS. BRADSHAW:) Because all of those things
12 are important to that analysis.
13    A.    No. You've just not offered anything. You
14 just said, "What happens in a car accident?" basically
15 and provided no additional information. So as I said
16 previously, the best anybody could ever say with that
17 limited information is something might occur, something
18 might not occur.
19         MS. BRADSHAW: That is all the questions I
20 have for you, Mr. Probst. Thank you.
21         Would you like to review the transcript
22 for accuracy? Or do you waive?
23         THE WITNESS: Oh, I'm fine waiving.
24         MS. BRADSHAW: We'd like a copy, please.
25         MS. LIEKHUS: All right. And, Crystal,

Page 54

1 I'll order a copy as well. And I take an e-tran.
2         (Proceedings concluded at 2:08 p.m.)
3         (Signature waived.)
4         (Exhibit Numbers 1 and 2 marked.)
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 55

1             C E R T I F I C A T E
2
3 STATE OF WASHINGTON
4 COUNTY OF KING
5
6         I, CRYSTAL L. HEREFORD, a Certified Court
7 Reporter licensed in and for the State of Washington, do
8 hereby certify that the foregoing transcript of the
9 deposition of BRADLEY PROBST, having been duly sworn, on
10 October 5, 2021, is true and accurate to the best of my
11 knowledge, skill, and ability.
12         IN WITNESS WHEREOF, I have hereunto set my hand
13 and seal this 20th day of October 2021.
14
15
16
17
18         _____
            CRYSTAL HEREFORD, RPR
            CCR License No. 21004877
19
20
21
22
23
24
25

14  (Pages 53 to 55)